20-3292 from the Eastern District of Arkansas. Brandon Wheeler versus Mark Kidder et al. Mr. Heaton, when you're prepared, please proceed. Your honors, good morning. May it please the court. The facts of this case begin with a murder investigation. The appellants were, at the time, officers at the Searcy Arkansas Police Department and they had suspected that the affilee, Brandon Wheeler, had murdered Jared Green. The officers gathered evidence and began to work on a probable cause affidavit with prosecutor Rebecca McCoy and Wheeler was arrested based on that affidavit. He then filed this lawsuit alleging that the officers violated his Fourth Amendment rights by submitting an affidavit that was untrue and that they arrested him without probable cause. Wheeler contends that the probable cause has two issues. First, that the officers did not include the recantation of a key witness's statement accusing Wheeler of trying to hire him to get rid of Green. Second, that the affidavit indicated that cadaver dogs found a body when they did not find a body. When the appellants moved for summary judgment based on qualified immunity, the district judge held that they were not entitled since they were dishonest in their affidavit. However, the district judge erred in her reading of the affidavit in light of the testimony of the officers based on their testimony in the affidavit and in the Supreme Court. In Walsh County, the officers are entitled to qualified immunity and this court should reverse and dismiss. First, let's talk about Measure Schmidt, the Supreme Court case. In that case, the suspect was wanted for attempted murder with a sawed-off shotgun. They obtained a warrant for all weapons and ammunition. Eventually, that was held to be overbrought, but the officers relied on the advice of the prosecutor and the advice of their supervisor and they had the affidavit approved by a neutral magistrate. In that case, because of their reliance on these people, specifically the advice of the prosecutor, they were entitled to qualified immunity. Even more on point, in my opinion, is the case Nord v. Walsh County, which comes out of this circuit. In that case, a deputy had run against a sheriff for the position of sheriff. After the county attorney asked if she could fire the deputy, the county attorney said that she could and she did so. I think it's well established in this circuit and generally that that's retaliation. However, the court held that it could be seen as well within the breathing room accorded as a public official and entitled the sheriff to qualified immunity, especially because of her reliance on advice of the county attorney. Counsel, this is Judge Smith. Is it your position that providing inaccurate, potentially misleading information to the magistrate judge is somehow insulated because legal counsel is involved? Well, your honor, respectfully, if they would provide a clear lie or if they were being obviously untruthful, then no, that would not be entitled to qualified immunity, but that's not what happened here. Here, the officers... Counsel, reading the statement regarding the evidence found at the property seems to clearly imply to just a casual reader or to just a reasonable reader that the cadaver dogs had discovered a body. Okay, so let's go into some background on the dogs and talk about the language of that affidavit. So, the detectives have been told by a retired detective that Green had been buried there, not that the body was still there, but that he had been buried there. Okay, so that same type of wording was used in the affidavit. They took dogs out and the dogs indicated at the very area under a deer stand where they were told that the body was buried. The dog's bark indicated what they do when they find evidence that something was there. Okay, so the affidavit itself says that it mentions aforementioned evidence and evidence that basically a body had been buried there. I agree that there could have been worded better, but I think a fair reading and the officer's reading, which is what matters... Well, wait a minute. Is that really a fair reading? It's incomplete and it's incomplete on its face. The officer knew it was incomplete. The lawyer knew it was incomplete. Can you really just say, you know, it's close enough? Well, respectfully, I think the officer's testimony is not that he knew it was incomplete. In his affidavit, the officer testified that the evidence that he was talking about in his affidavit was evidence that the dogs had barked, and that's exactly what the prosecutor told him too, was that the dogs barking at that spot was evidence in and of itself, and that when the affidavit refers to aforementioned evidence, that's what he was talking about. We're talking about a police officer. We're attorneys and we're big on words, but when you have a police officer writing an affidavit, it's not perfect. I was a trial judge for 27 years, and I can tell you that during that period of time, I looked at a lot of affidavits for search warrants, and I mean, this one wouldn't have left me with warm, fuzzy feelings once I found out all the facts. Your Honor, the other area, what about not disclosing the recantation of testimony from one of the witnesses that was being relied on for suspicion for the defendant? Okay, Your Honor, so in 1995 Langley, the witness one in the affidavit, he had stated to officers a few things. One of the things he stated was that Wheeler had offered him $1,000 to get rid of Green, but that wasn't the only thing he told investigators. He also provided information that Wheeler and Wheeler's roommate grabbed Green in the Walmart parking lot. Well, Green's car was found at Walmart, and that information was not available to the public. So even though Langley recanted in 2000, the officers still had reason to believe that Langley was being truthful because he provided other information that nobody knew. And again, in 2016, when they did the polygraph and they did the CVSA test, both of those tests showed that Langley, at that time in 2016, standing by his recantation was not being truthful. Now, this brings us all back to when we put that in the affidavit that he recanted. The officers had that same question. They didn't know. So what did they do? They asked the prosecutor, and the prosecutor told them they didn't have to put that in there because once after the arrest for the defense team would be able to find that through discovery and use that because it was available in the case file. Does she agree with that statement that you just made, or does she deny that she told them that they didn't have to put it in there? Is that a disputed fact? So the prosecutor says that she does stand by the fact that she told them that they could put that in there as long as it was available to their discovery. The other, the to put that in there, which she didn't. She didn't tell them to put that in there and she didn't tell them to not put that in there. But she did say, and she stands by the fact that she said that she could put that in there. And to this day, in her most recent affidavit, the prosecutor also says that she still believes that the affidavit is good and that it supports the finding of probable cause. One of the things that went on in this whole thing is they work, you can look at the testimony, the officers work side by side with Prosecutor McCoy every day. Constant phone calls, constant emails. They would shoot the affidavit back and forth. The prosecutor knew everything. She knew about the dogs. She knew about the recantation. She knew everything. She worked with them. It was almost as if she drafted the affidavit. Because the testimony even says that she did, that she would edit it, she would suggest edits, that they would shoot it back and forth. They worked on this a long time before they submitted. Do you have any training in this county to the effect that you should tell the judge everything and let the judge decide? I'm not aware of any training, Your Honor, to that effect. But I do know that they testified that they can't put everything in an affidavit because it would be too long. You have to, that's inadequate. You could add a paragraph or two to this one without overburdening the judge. Well, Your Honor, I'm just going to the deposition testimony that states that one of the officers had stated in their deposition that you have to be pointed in your affidavit and go straight just to the things that support a probable cause before you overlap everything. Well, that may be, go ahead. So, the point being though... Let me ask you this on the affidavit about the recantation. Are you saying that if the information about the recantation had been included, my understanding is when there's an omission like this, we're supposed to look at what would the affidavit look like if the omitted information had been included and then make a judgment whether there was still probable cause. I hear you saying that if they put in the recantation information, it wouldn't necessarily have undermined the original statement. That's correct. It does not undermine the original statement. There was enough other things that Langley said that he shouldn't have known without having firsthand knowledge of the investigation that would have led a neutral magistrate to know. This guy could have also been truthful whenever he said that Wheeler was trying to get rid of this guy. As you're saying, there's still probable cause even if we put that recantation in there. And so, your honors, for now, I'm going to reserve the rest of my time for rebuttal. Thank you, Mr. Eden. Mr. Petty? Good morning, your honors. Good police of the court. My name is Michael Petty. It's an honor to be here and argue on behalf of my client, Mr. Brandon Wheeler. I'll begin by saying that this is the defendant's last opportunity to have this case dismissed. This second motion for summary judgment is tantamount to a motion to dismiss based on qualified immunity. The second motion for summary judgment is based on information that these defendants had at the time of their first motion for summary judgment, which is the officers newly provided self-serving affidavits. I think reflecting on all aspects of this case, there's a great deal of irony that the defendants are arguing there's a lack of substantial facts at issue when the defendants have shown an amazing ability to simply make up facts as they go. They should be ashamed of themselves, your honors, but it appears they are not. I've only practiced law for five years. However, I've witnessed firsthand that my client has suffered the fact that it doesn't take a conviction, only charges, to ruin someone's life. Plaintiff in this case will bear the cross of these officers' actions for the rest of his life. Mr. Wheeler had no criminal history. He suffered substantial financial and emotional losses, along with his family, simply because these officers chose to lie about the evidence that they had. You know, this is not a closing argument to a jury. Let's get to the legal points that you wish to raise, please. When you're doing that, why don't you discuss specifically why including the recantation and so-called recantation information would have destroyed probable cause, or whether even viewing the whole story about Langley, there would have been enough there at least to get over a probable cause hurdle, which of course is lower than preponderance and lower than reasonable doubt. Yes, your honor. The defendants allude to the fact that Mr. Langley provided information that only an individual who had some association with this crime would have known. However, the car being discovered, Mr. Green's car that was discovered by a friend of Mr. Green's, and the police didn't discover that. It was turned over to the family. The police didn't even investigate that vehicle for weeks after the family discovered it, the friend of a family discovered it. This was a small community. People talked. This wasn't secret information that only somebody who had intimate knowledge of some suspected crime would have known. This was, and Langley stated in his recanted version, he was repeating information he had heard through the drug traffic scene. He was going to prison when he made that statement, and he made that statement in an attempt to lessen his time in prison. The thing is, sometimes guys are willing to tell the truth when they want to lessen their time in prison, and then when it won't help them anymore, they're not interested in providing even the truth. So how do we know which was the true version here, the first or the second? And I guess that leads me to wonder if they put the whole story in, could the judge have said, well, it's a 50-50 thing, but I think that's enough at least for probable cause. Well, your honor, I think that it took some convincing of at least what law enforcement determined to do, which was re-interview Mr. Langley on multiple occasions. They interviewed him, he recanted. He actually stated that making that statement was one of his biggest regrets in life, and that he didn't know the plaintiff in this case at the time when this occurred. And then new detectives, years later, go and interview Mr. Langley again, and he says, hey, I've told y'all, I made that up, I made that up, I didn't know those guys then. And then they want to give him a voice stress analysis test, which they hook him up to, and it corroborated the recanted version for the most part. Then they gave him a polygraph, and this polygraph was done in 2017, and ironically, your honors, this polygraph was taken to corroborate the recanted version, which was corroborated by the voice stress analysis test, and these officers filed their affidavit, had it notarized on the same day that they conducted that polygraph. This wasn't something that they had forgotten about. And you look at that in conjunction with the language that was no such evidence. I mean, they're talking about a dog barking, connecting somehow my client to the remains of somebody that they had absolutely no proof of crimes been committed, much less a body had been disposed of there. And even if there was a body, it may not have been Mr. Green's, they had nothing, your honors. I think that- What about the fact that the affidavit doesn't claim there was a body? Wouldn't you expect if they'd found a body that the affidavit would say we found a body? Well, it said that evidence was recovered, which corroborated information which had been provided, and that evidence was, cadaver dogs were used successfully in locating the aforementioned evidence. I think that it did it of liberally to the fact that some human remains were discovered, your honor. And I know the defendants are saying, hey, what do you got guidance from the prosecutor? But in the other side of their mouth, they're saying, well, these officers, they crafted this affidavit. They're not legal writers. They're not the best at wording or verbiage, but they were getting direction every day, daily. It's basically the prosecutor's affidavit, which raises another serious issue in this case. When we have law enforcement who's in charge of an investigation, but they're being directed and told allegedly, even though the prosecutor denies that she did that, she says she did not tell them to include or take out of this arrest affidavit. This affidavit wasn't signed by the prosecutor. This affidavit was signed by a detective, and all three take responsibility. And I think that they said, well, you can't put everything in the affidavit. It was in the case file. It was provided to the court. Well, that's just not true, your honors. The court's not privy to the case file and all this discovery in a criminal case, as I'm sure you all know. This was hidden. This was an attempt. And what was the rush? Mr. Green, he'd been disappeared for 22 years. I mean, this is a capital murder case. There's no statute of limitations. They could still be digging and draining ponds and interviewing witnesses and gathering some scintilla of evidence which could connect a suspect to this trial, but that's not what they did. They felt that if they went and arrested this guy, that he'd incriminate himself or roll over, or maybe somebody else would come forward, or some evidence would come forward to corroborate their assertion. I can't imagine when correcting this affidavit that probable cause exists, and the district court found that you exclude this fabrication and the omissions that it doesn't provide probable cause. Your honors, I think that I just lost visual. Can you hear me, your honors? We can hear you. Hello? We can hear you, Mr. Petty. I just lost connection to somebody there. Mr. Petty, we can hear you, but your video has frozen, but you can conclude your argument. Chief Judge Smith, this is Jeanette in the courtroom. We've stopped the timer, and we will remove him and have him rejoin. All right. I'm terribly sorry for the delay. I'm so sorry. I don't know exactly when I was cut off, but I would point to the district court's finding that when the affidavit omissions and fabrications are corrected, that the court held that probable cause wasn't present. I think that there are a multitude of material facts and issue in this case, and the granting summary being improper, and I'll reserve the rest of my time, judges. All right. Thank you, Mr. Petty. Mr. Heaton, your rebuttal. All right. Your honors, a few things that I'd just like to point out. First, let's talk about Langley and his recantation. There's a few things that are in the affidavit that could point to that probable cause affidavit, just to be specific, just to show why Langley may have recanted. First, Wheeler's roommate bragged about Green's disappearance shortly after he came up missing. Later, another friend of Wheeler's disclosed information about the murders shortly before committing suicide. Langley very well could have been scared. That could definitely have led to his recantation. Also, these things are in the affidavit. The statement that Langley made and the information about the dogs are not the only thing in that affidavit. It's a long affidavit. I say long. It's a full page or two full pages of information about different witnesses that have different information that point to Brandon Wheeler. Correcting this affidavit still leads to probable cause. Also, as Judge Colleton pointed out, the affidavit never mentions having a body. Counsel, to that point, the final paragraph of the affidavit requests a warrant based on two charges. One is capital murder. The other is abuse of a corpse. If you're going to file a charge for abuse of a corpse, doesn't that imply you actually have found one? Your Honor, I think that the fact that the dogs had found evidence that a body had been buried somewhere and then was no longer there gives evidence that that body was moved, which would be evidence of abuse of a corpse. I think that's where they get that information. Further, the testimony shows that the judge had made a comment, something to the effect that he wouldn't be offended if after he signed the warrant, if they wadded it up and threw it in the trash. I don't think the judge would have been making those comments if he would have known there was a body. That just brings us all back to the fact that the officers were not trying to mislead the judge. The officers were not trying to mislead anyone. That's the whole purpose of qualified immunity. They made professional judgments in drafting this affidavit about what needed to go in there. In making those judgments, they relied on the advice of a prosecutor, the advice of an attorney, the advice of an attorney that had legal training that they didn't have. These officers, based on Nord and based on Messerschmidt, should be able to rely on that advice when they draft and submit this affidavit. It's telling that the Appellee's didn't name, he didn't speak to one case. And that's because the cases point to qualified immunity. The cases show that these officers who are trying to be truthful, now the affidavit may be poorly written, but they shouldn't be judged, they shouldn't be liable in a civil court based on poor writing. These officers had the right intentions. They worked with the prosecutor the following the advice of the prosecutor and trying to follow the law. And they shouldn't be punished for trying. I can understand your argument that maybe the omissions wouldn't defeat probable cause, but I don't understand your argument that their intentions were perfectly appropriate. Why wouldn't it be appropriate to tell the judge about the recantations and tell him more clearly what happened at the site of the cadaver search? Your Honor, I think that the intention would be to be completely transparent and tell the judge everything and let the judge decide whether it really still meets the probable cause threshold. So there's quickly, I'm running out of time, but two things here. So first with the recantation, this goes back to the prosecutor telling them that the judge and everyone could see the case file and know about their recantation. I don't think they were trying to hide it from him. I think they thought that the judge could see that. He couldn't see it before he decided on whether to sign the warrant. Well, I think that they had taken the entire file to the judge is what the evidence points to. And quickly, secondly, with the dogs, I don't think they were, when they wrote this, I don't think they were trying to say that they had found a body. I think they were trying to say this is exactly what happened. And honestly, I think they were trying to get a little too legalese wording with it. I don't think they did that on purpose, worded it to where it sounded like that. And just to close, like I said, the cases point to qualified immunity. The officers tried to do what they, tried to follow the law, tried to listen to the prosecutor, and this court should reverse the ruling of the district court. Thank you. Thank you, Mr. Heaton. Thank you also. Mr. Petty, we appreciate both counsel's participation and argument before this panel this morning. We'll take the case under advisement.